Filed 2/23/24  P. v. Madrigal CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C096959 |
| Plaintiff and Respondent, | (Super. Ct. No. 21FE012376) |
| v. | |
| CHRISTIAN MADRIGAL, | |
| Defendant and Appellant. | |

Victim went to a nightclub with her friends to celebrate her birthday.  One of her friends (girlfriend) was dating defendant Christian Madrigal and brought him to the celebration.  At the end of the night, victim was drunk.  Victim and girlfriend stayed at defendant's nearby apartment so they did not have to drive home.  While girlfriend was sleeping in the bedroom, defendant kissed victim on the couch in the living room, despite victim's protests, and had sex with her.

A jury found defendant guilty of forcible sexual penetration and assault with intent to commit rape.  It found true as to both counts the aggravating circumstances that

1

defendant took advantage of a position of trust and that victim was particularly vulnerable. The trial court sentenced defendant to seven years and four months in prison, consisting of the middle term of six years for forcible sexual penetration, plus one third of the middle term or one year and four months for the assault.

On appeal, defendant contends the trial court prejudicially erred in: (1) admitting victim's out-of-court statements about the assault under the fresh complaint doctrine and as spontaneous statements; (2) admitting unduly prejudicial testimony that defendant drugged victim and her friends; (3) declining to instruct the jury that defendant was not guilty if he reasonably but mistakenly believed victim consented to the sexual intercourse; and (4) selecting the middle term for both counts even though there were mitigating factors and the jury's aggravating circumstances true findings were not supported by sufficient evidence. He further contends he received ineffective assistance of counsel because his trial counsel: (1) failed to request a limiting instruction on the fresh complaint evidence; (2) failed to request a voluntary intoxication instruction; (3) failed to file a due process or speedy trial motion despite pre-prosecution delays; and (4) requested a jury instruction on the lesser included crime of assault with intent to commit rape.

We affirm, finding no error by the trial court and no ineffective assistance of counsel.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Assault*

Victim and her friends, who included girlfriend and two others, Ta. and Ji., went to a nightclub on a Sunday night in April 2015 to celebrate victim's birthday. Because defendant lived close to the nightclub, victim, girlfriend, and Ji. decided to meet at his place before going to the nightclub, and planned to stay there afterwards so they did not have to drive home. Ta. met up with the group at the nightclub.

2

When victim arrived at defendant's apartment, she saw there were already drinks laid out in "red SOLO cup[s]." The drinks were very strong, and victim took only a few sips. She did not remember defendant drinking. Shortly after Ji. arrived, the group headed to the nightclub.

At some point that night, defendant told victim that girlfriend left early for his apartment because she was too drunk. After girlfriend left, defendant became "very attentive" and "touchy" towards victim. He danced closely behind victim and put his hands on her hips. This made victim uncomfortable, and she moved away from him. Defendant made additional attempts to dance with victim, but she continued to move away. Victim was not interested in or attracted to defendant and denied ever indicating to defendant that she wanted to have sex with him.

By the time the nightclub closed early Monday morning, victim had consumed three alcoholic drinks and was drunk. Upon learning Ji. would not go back to defendant's apartment as they had originally planned, victim "tensed up" because she "would have to walk home alone with" defendant.

On their way back to defendant's apartment, defendant made multiple attempts to hold victim's hand. Victim held hands with defendant for less than five seconds and ran ahead to avoid holding hands again. Defendant also grabbed the back of victim's neck at one point and pushed her against a gate. Victim got away but was terrified by defendant's actions.

When defendant and victim got to his apartment building, victim suggested she could sleep in her car. Upon hearing the suggestion, defendant's "whole face changed. It was like he got angry that [victim] even would say that." Victim did not call a rideshare service to go home because her house keys were in defendant's apartment, and she tried to minimize what happened by convincing herself that defendant was with girlfriend.

On the way upstairs to defendant's apartment, defendant repeatedly rubbed victim's buttocks over her dress. Victim walked up the stairs quickly to get away from

3

defendant but did not tell him to stop. When they got to the top of the stairs, defendant lifted victim's dress. Victim felt upset and violated and told defendant, "Don't do that." Defendant looked angry and did not acknowledge victim's rejection. They quietly entered defendant's apartment, and defendant went straight to his room.

Upon entering defendant's apartment, victim laid on the couch fully clothed while her "head was spinning." When victim was about to fall asleep, defendant came out of his room with only his underwear on, sat on the couch, and turned on the TV. He grabbed victim's ankles and quickly pulled her towards him while she laid flat on her back. Defendant then pushed victim's knees apart and got on top of victim touching and kissing her for what "felt like at least ten minutes." Victim pushed defendant with her right hand, moved her head away, and tried to "squirm away." She also repeatedly said "No" and "Stop," but defendant "shush[ed]" her each time and continued. Victim was visibly shaking when defendant stopped, and "he grabbed a blanket after that."

A few minutes later, defendant "removed the blanket and got on top of" victim again, no longer wearing his underwear. Victim felt defendant was more forceful and aggressive this time. He held victim down as she attempted to squirm away, lifted her dress, and touched all over her body. As he was touching victim, defendant also moved victim's underwear aside and put his fingers in and out of victim's vagina multiple times. Victim was "squirming" and repeatedly attempting to push defendant back with her right hand. But she did not continue to tell defendant "No" because "the more it had escalated, [she] was disassociating more" and she was "trying [her] best not to be in [her] body." Defendant then held victim's right wrist down, and penetrated victim with his penis. Victim was "completely paralyzed" and did not remember what happened after the penetration. Defendant stopped at some point and got off victim.

Once he got off victim, defendant started using victim's hand to masturbate. Defendant stopped a few minutes later when the alarm on victim's phone went off around 6:00 a.m. Defendant asked victim to turn off the alarm, and victim complied. After

4

victim turned off the alarm, defendant resumed masturbating with victim's hand while victim laid with her eyes closed. Victim closed her eyes "[j]ust to not be there" because "[i]t was all just unreal" and she did not want to see what defendant was doing. About 10 minutes later, the alarm on victim's phone went off again and defendant turned off the alarm. Girlfriend came out of the bedroom. Defendant closed his eyes, pretending to sleep on the couch.

As soon as victim saw girlfriend, victim stood up and asked where the bathroom was. After using the bathroom, victim told girlfriend in private that defendant was "fingering" her. Girlfriend then walked victim out of the apartment building, and victim drove home.

When victim got home, she tried to convince herself to "keep this secret for the rest of [her] life." She decided to shower and get ready for her class. But when she got out of the shower, she knew she "couldn't hold onto that." She then called her sister. Victim did not remember the conversation well, but she recalled telling sister " '[s]omething weird happened' " and sister mentioning calling the police. Victim spoke to girlfriend and Ta. later that day, and they helped her "feel secure in reaching out to file the report."

Victim spoke with Officer Joseph Tippets from the Sacramento City Police Department at 11:28 p.m. on Tuesday night. After speaking with Officer Tippets, victim went to the hospital for a sexual assault examination at 1:22 a.m. on Wednesday morning. Ten sperms cells were found on victim's labia swabs, and on victim's underwear was Y-STR DNA profile, present only in males, consistent with that of defendant.

Defendant claimed he was drunk and did not remember what happened when girlfriend later confronted him about the assault.

B.    *The Investigation*

After Officer Tippets wrote the initial report on the case, the police department did not follow up and suspended the investigation in August 2015. In May 2019, the case

was reassigned to Officer Marcus Masingale.  As part of his investigation, Officer Masingale interviewed victim, sister, girlfriend, Ta., Ji., and victim's college professor.  The People charged defendant in July 2021.

*C.     Jury Verdict and Sentencing*

Following a trial in May 2022, a jury found defendant guilty of forcible sexual penetration (Pen. Code, § 289, subd. (a)(1); further undesignated statutory references are to the Penal Code) and of assault with the intent to commit rape (§ 220).  It found true as to both counts the aggravating circumstance allegations that victim was particularly vulnerable (Cal. Rules of Court, rule 4.421(a)(3)) and that defendant took advantage of a position of trust or confidence to commit the offense (Cal. Rules of Court, rule 4.421(a)(11)).

The trial court sentenced defendant to seven years and four months in prison, consisting of the middle term of six years on the forcible sexual penetration count, plus one third of the middle term or one year and four months on the assault count.  Defendant timely appealed.

DISCUSSION

I

*Standard of Review*

We review the trial court's decisions on the admissibility of evidence and sentencing choice for abuse of discretion.  (*People v. Waidla* (2000) 22 Cal.4th 690, 725; *People v. Sandoval* (2007) 41 Cal.4th 825, 847.)  A trial court abuses its discretion when it "bases its decision on express or implied factual findings that are not supported by substantial evidence."  (*People v. Moine* (2021) 62 Cal.App.5th 440, 449.)

Substantial evidence is "evidence which is reasonable, credible, and of solid value from which a rational trier of fact could find defendant guilty beyond a reasonable doubt."  (*People v. Cage* (2015) 62 Cal.4th 256, 275.)  "Our application of this standard of review does not permit reweighing the evidence or reevaluating the credibility of

6

witnesses." (*People v. Murphy* (2022) 80 Cal.App.5th 713, 725.) "We discard evidence that does not support the judgment as having been rejected by the trier of fact for lack of sufficient verity." (*Ibid.*)

We review claims of instructional error de novo. (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.)

## II

### *Admission of Victim's Out-of-Court Statements*

Defendant contends the trial court prejudicially erred in admitting victim's out-of-court statements to sister, girlfriend, college professor, and Ta. regarding the assault. Specifically, he claims victim's statements included details of the assault that exceeded the scope of the fresh complaint doctrine and unduly prejudiced him, and they were not spontaneous because she had time to contrive a story to avoid losing girlfriend's friendship. He further contends his trial counsel was ineffective in failing to request a limiting instruction on the fresh complaint evidence. We disagree.

A.    *Additional Background*

The People filed a motion in limine seeking to admit victim's disclosures of the assault to girlfriend, sister, and college professor under the fresh complaint doctrine. Defendant objected to admission of these statements as hearsay.

The trial court admitted victim's disclosures to college professor under the fresh complaint doctrine and admitted her disclosures to girlfriend and sister both under the fresh complaint doctrine and as spontaneous statements.

At trial, girlfriend testified that when she walked out of defendant's bedroom on Monday morning, she saw defendant and victim laying on the couch together and defendant had his arm underneath victim. Girlfriend used the bathroom and returned to defendant's bedroom. Victim followed girlfriend into the bedroom and told girlfriend that defendant "tried to finger her while she was sleeping," looking worried. Girlfriend asked victim if she was sure, and victim responded affirmatively. Girlfriend then offered

7

to escort victim out of the apartment.  Because victim admitted to girlfriend that she could not "really remember" all the details, girlfriend also told victim if she felt like anything happened, she needed to "go and get checked out."

Sister testified that victim called her early morning one day in April 2015 at around 7:30 or 8:00 a.m.  When sister answered the phone, victim was crying "[r]ight away."  After crying for about a minute, victim told sister "the night before that she was raped."  The prosecutor asked sister for "other additional details about what had happened or how it came about."  Defense counsel objected to this question on the ground that it was hearsay "past the fresh complaint."  The trial court overruled the objection, finding the evidence admissible as spontaneous statements.  Sister proceeded to testify that victim "said that she was out drinking for her birthday . . . and . . . she woke up to someone raping her."

College professor testified that she taught victim in the fall 2014 and spring 2015 semesters.  Victim was "an A-plus" student during the fall 2014 semester, but "kind of falling off track" around March or April in the spring 2015 semester.  Vctim stopped going to classes or turning in her assignments.  College professor made multiple attempts to reach victim, but victim never responded.  Near the end of the semester, victim finally came to class and completed a presentation.  After the presentation, college professor checked in with victim and victim started "shaking and crying," telling college professor, "I was sexually assaulted, and my world fell apart."  Defense counsel interrupted, objecting that the statement was not a fresh complaint but hearsay.  The trial court overruled the objection.

Ta. testified that she spoke to victim on the phone at around 9:00 or 10:00 a.m. on Monday morning, several hours after the assault.  Victim was crying on the phone, and Ta. described her as "freaking out," "nervous," and "hysterical."  Ta. stated victim told her that "she was sleeping on the couch, and [defendant] came up to her."  The prosecutor asked Ta. what victim said happened specifically, to which defense counsel made a

8

hearsay objection.  After a sidebar discussion, the trial court overruled the objection.  Ta. then testified that victim told her defendant approached her while she was sleeping on the couch and he "put his penis in her mouth."  Ta. suggested to victim that she "get tested" for "[i]ntercourse."

B.      *The Fresh Complaint Doctrine: Statements to Girlfriend and College Professor*

Under the fresh complaint doctrine, a sexual assault victim's out-of-court disclosure of an alleged offense is admissible for a limited, nonhearsay purpose of establishing "the fact of, and the circumstances surrounding, the victim's disclosure of the assault to others" to help the jury decide whether the offense occurred.  (*People v. Brown* (1994) 8 Cal.4th 746, 749-750.)  The jury may consider evidence admitted under this rule "for the purpose of corroborating the victim's testimony, but not to prove the occurrence of the crime."  (*People v. Ramirez* (2006) 143 Cal.App.4th 1512, 1522.)  Historically, the victim's disclosure must have been made within a reasonable time after the assault, under the rationale that women would naturally "confide in someone immediately following a sexual assault."  (*Brown*, at pp. 755-757.)  This premise has been discredited and rejected by our Supreme Court that held that the admissibility of such evidence does not depend on whether there was a delay in the report or whether the report was made spontaneously.  (*Id.* at p. 763.)  Instead, the rule of relevance applies.  (*Ibid.*)  Thus, the victim's out-of-court report "ordinarily would be relevant . . . and therefore admissible, so long as its probative value outweighs its prejudicial effect."  (*Id.* at p. 760 [citing Evid. Code § 352].)

When introducing fresh complaint evidence, details of the report cannot be recounted, but the People are allowed to show "the alleged victim's statement of the nature of the offense and the identity of the asserted offender."  (*People v. Burton* (1961) 55 Cal.2d 328, 351, italics omitted.)  Otherwise, "testimony to the bare fact that the victim 'made a complaint' as to an unspecified subject matter on its face would be meaningless."  (*Ibid.*)

9

Here, the trial court properly admitted victim's statements to girlfriend and college professor under the fresh complaint doctrine. Girlfriend testified that victim told her defendant "tried to finger her while she was sleeping" and college professor testified girlfriend confessed she "was sexually assaulted." These statements fell within the scope of the fresh complaint doctrine because they were limited to the nature of the alleged offense and the identity of the offender. They also corroborated victim's testimony at trial and thus had a tendency to prove the alleged offense occurred.

We reject defendant's contention that victim's statements to girlfriend and college professor were unduly prejudicial because they (1) changed over time, (2) falsely supported victim's credibility when she could not remember the assault due to intoxication, and (3) gave the jury the impression that there were multiple witnesses to the assault. "Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) The jury here was instructed to consider any inconsistencies in evaluating a witness's testimony, and we assume the jury followed the instruction. (*People v. Chhoun* (2021) 11 Cal.5th 1, 30.) And, contrary to defendant's contention, victim testified she remembered the digital and sexual penetration by defendant despite being intoxicated. Her statements to victim and college professor corroborated her trial testimony. (See *People v. Ramirez*, *supra*, 143 Cal.App.4th, at p. 1522 [the jury may consider fresh complaint evidence "for the purpose of corroborating the victim's testimony"].) Moreover, neither witness testified that they personally saw the alleged offense, and nothing in the record suggests the jury was confused on this point. We find no abuse of discretion by the trial court in admitting these statements.

We also reject defendant's claim that his trial counsel was ineffective for failing to request a limiting instruction on the fresh complaint evidence. To establish constitutionally inadequate representation, the defendant must show that (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense.

(*Strickland v. Washington* (1984) 466 U.S. 668, 687.) We defer to trial counsel's reasonable tactical decision in examining a claim of ineffective assistance of counsel. (*People v. Weaver* (2001) 26 Cal.4th 876, 925.) "If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation." (*People v. Gray* (2005) 37 Cal.4th 168, 207.)

Here, there are possible satisfactory explanations why trial counsel chose not to request a limiting instruction. Victim's statements contained little details about the alleged assault other than the fact that it happened. Trial counsel could have reasonably decided that a limiting instruction would needlessly draw the jury's attention back to these short yet unfavorable statements. (*People v. Carter* (2003) 30 Cal.4th 1166, 1223.) We thus reject defendant's ineffective assistance of counsel claim.

C.      *Spontaneous Statements:  Sister and Ta.*

A declarant's hearsay statement is admissible as a spontaneous statement if it "(a) [p]urports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and (b) [w]as made spontaneously while the declarant was under the stress of excitement caused by such perception." (Evid. Code, § 1240.) The proponent of the statement must also show that the declarant had "no time to contrive." (*People v. Hughey* (1987) 194 Cal.App.3d 1383, 1388.) But "[n]either lapse of time between the event and the declarations nor the fact that the declarations were elicited by questioning deprives the statements of spontaneity if it nevertheless appears that they were made under the stress of excitement and while the reflective powers were still in abeyance." (*People v. Washington* (1969) 71 Cal.2d 1170, 1176.) A trial court's "preliminary factfinding undertaken to determine whether the requisite elements of the spontaneous statement exception have been met will be upheld if supported by substantial evidence." (*People v. Liggins* (2020) 53 Cal.App.5th 55, 61.)

11

Having concluded victim's statements to girlfriend were admissible under the fresh complaint doctrine, we need not decide whether they were also spontaneous statements. We thus turn to victim's statements to sister and Ta.[1]

Here, defendant's assault ended shortly after 6:00 a.m. on Monday. Victim left defendant's apartment soon after that, drove straight home, and showered. She called sister between 7:30 a.m. and 8:00 a.m., right after she got out of the shower. Victim cried for about a minute on the phone before she told sister that she was raped. Victim then called Ta. at around 9:00 to 10:00 a.m., "crying" and "freaking out" on the phone, saying defendant put his penis in her mouth. Victim's apparent emotional distress when she spoke to sister and Ta. about the assault supported the trial court's ruling that her statements were spontaneous. (See *People v. Brown* (2003) 31 Cal.4th 518, 541 [statement made two and one-half hours after the crime was spontaneous when the declarant "continued to labor mightily under the emotional influence of the disturbing events he perceived, so much so that he could not stop his body from shaking nor stem the flow of tears"].)

We reject defendant's contention that victim's emotional distress was instead caused by her concerns over losing girlfriend's friendship. This, at best, is contradictory evidence that we do not reweigh in a substantial evidence review. (*People v. Liggins, supra*, 53 Cal.App.5th at pp. 63-64.)

---

[1] In overruling defendant's hearsay objections to Ta.'s testimony, the trial court did not expressly invoke the spontaneous statement exception. However, given the trial court found similar statements from victim to girlfriend and sister fell under the exception, we infer, as does defendant on appeal, that the trial court also ruled victim's out-of-court statements to Ta. admissible as spontaneous statements. (See *People v. Rincon* (2005) 129 Cal.App.4th 738, 752.)

Defendant also contends the trial court failed to make explicit factual findings that the statements were spontaneous. But such findings were implied by the trial court's ruling admitting the evidence. (Evid. Code, § 402, subd. (c).)

III

*Admission of Other Testimonies*

Defendant contends the trial court prejudicially erred in admitting testimonies of girlfriend, victim, and Ji. that they believed defendant had drugged them. He claims these testimonies were irrelevant and unduly prejudicial. But defendant provides no citation to the record where girlfriend or victim so testified. Instead, defendant concedes victim told Officer Tippets that defendant " 'never had access to the drinks or to drug her.' " We thus disregard defendant's challenge to girlfriend and victim's testimonies relating to this issue. (*County of Sacramento v. Singh* (2021) 65 Cal.App.5th 858, 861 [we may disregard factual contentions that are not supported by citations to the record].) We further conclude the trial court properly admitted Ji.'s testimony.

A.     *Additional Background*

Defense counsel moved in limine to exclude all evidence relating to anyone being drugged by defendant. At the hearing, the prosecutor contended such evidence was part of the intoxication evidence as it showed how the witnesses felt, and "intoxication is a key part of this case." The prosecutor conceded the prosecution had "no evidence" that defendant drugged the witnesses. The trial court admitted the evidence, finding it relevant to prove the People's position that victim was unable to resist due to intoxication.

Ji. testified that when she arrived at defendant's apartment, the group was already drinking, and defendant handed her a drink. She had one or two drinks from defendant before leaving for the nightclub. Although Ji. did not think she drank too much at the nightclub, she felt she had never been so drunk before. She remembered defendant telling her she would "feel better in three days," which she thought was odd and a "really

big red flag." Ji. had hangovers before but they never lasted for more than several hours. However, as defendant predicted, it took Ji. three days to recover from that night. Based on this, Ji. told her sister that she believed defendant had drugged her. Ji. did not recall defendant drinking with the group that night and he did not look drunk to her.

On the other hand, girlfriend testified that she bought a bottle of champagne that night, opened the champagne, and poured it into the cups at defendant's apartment.

In closing, defense counsel argued Ji. created a "false narrative" about being drugged. He pointed out that girlfriend "had red SOLO cups, had a bottle of champagne, popped the champagne, poured it in the cups." He noted even the prosecutor did not argue defendant drugged the group: "[T]hey have let that go."

B.    *Undue Prejudice*

Only relevant evidence is admissible. (Evid. Code, § 350.) "Relevant evidence" is evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) But the trial court has the discretion to exclude relevant evidence if its probative value is substantially outweighed by the probability that its admission will create substantial danger of undue prejudice. (Evid. Code, § 352.)

Here, Ji.'s testimony had a tendency to show defendant drugged the group, including victim, making victim severely intoxicated, vulnerable, and unable to resist his assault. This belief was supported by Ji.'s experience of her personal level of intoxication that night, the severity of her hangover afterwards, as well as defendant's odd yet accurate prediction of her recovery time.

Ji.'s testimony did not create substantial danger of undue prejudice. Ji. was the only witness who testified defendant drugged the group, and her belief was contradicted by girlfriend's and Officer Tippets's testimonies. Girlfriend confirmed she purchased and poured the drinks herself, and Officer Tippets recalled victim denying defendant had drugged her. In closing, the prosecutor did not argue defendant drugged victim, and

14

defense counsel emphasized Ji.'s testimony was a "false narrative" contradicted by other evidence. Because Ji.'s testimony was sufficiently countered at trial, we are satisfied it did not unduly prejudice defendant.

IV

*Mayberry Instruction*

Defendant contends the trial court prejudicially erred in denying his request to instruct the jury under *People v. Mayberry* (1975) 15 Cal.3d 143 (*Mayberry*) that would have allowed the jury to find defendant not guilty if he reasonably but mistakenly believed victim had consented to the sexual intercourse. We find no substantial evidence supporting a *Mayberry* instruction.

A defendant's reasonable and good faith mistake of fact regarding a person's consent to sexual intercourse is a defense to rape. (*Mayberry, supra*, 15 Cal.3d at p. 155.) "The *Mayberry* defense has two components, one subjective, and one objective. The subjective component asks whether the defendant honestly and in good faith, albeit mistakenly, believed that the victim consented to sexual intercourse. In order to satisfy this component, a defendant must adduce evidence of the victim's equivocal conduct on the basis of which he erroneously believed there was consent." (*People v. Williams* (1992) 4 Cal.4th 354, 360-361, footnote omitted.) The objective component "asks whether the defendant's mistake regarding consent was reasonable under the circumstances. Thus, regardless of how strongly a defendant may subjectively believe a person has consented to sexual intercourse, that belief must be formed under circumstances society will tolerate as reasonable in order for the defendant to have adduced substantial evidence giving rise to a *Mayberry* instruction." (*Id.* at p. 361.)

"The defendant bears the burden of raising a reasonable doubt as to whether he harbored a reasonable and good faith but mistaken belief of consent." (*People v. Williams, supra*, 4 Cal.4th at p. 361.) A *Mayberry* instruction is given only when substantial evidence shows the defendant honestly and mistakenly believed that the

15

victim consented to sexual intercourse. (*Ibid.*) " 'Substantial evidence' " here is "evidence sufficient to 'deserve consideration by the jury,' not 'whenever *any* evidence is presented, no matter how weak.' " (*Ibid.*)

Here, no substantial evidence supports a *Mayberry* instruction. Defendant contends that victim's flirtatious behaviors towards him at the nightclub and on the way back to the apartment, along with her silence during the assault, reasonably led him to believe she consented to the sexual intercourse. But regardless of whether defendant accurately interpreted victim's behaviors earlier that night, when he kissed and touched victim on the couch, victim clearly and repeatedly rejected his advances and requested him to stop while shaking in fear. Although defendant stopped, he resumed just minutes later, holding victim down, and digitally and sexually penetrated her. No reasonable person would think victim consented to sexual intercourse with defendant just minutes after rejecting his kisses and touches. "[A] criminal invasion of sexual privacy does not become a nonrape merely because the victim is too fearful or hesitant to say something to the effect that 'I guess you know I don't want you to do this.' " (*People v. Bermudez* (1984) 157 Cal.App.3d 619, 622.) The circumstances here are not within those that "society will tolerate as reasonable." (*People v. Williams, supra*, 4 Cal.4th at p. 361.) The trial court did not err in refusing to give a *Mayberry* instruction.

V

*Sentencing*

Defendant contends the trial court committed reversible error when it selected the middle term sentence on both the forcible sexual penetration count and the assault count. We disagree.

A.    *Additional Background*

At sentencing, defendant sought the low term on both counts on the ground that he was 25 years and 9 months old at the time of the offense, making him a youth under section 1170, subdivision (b)(6)(B). The trial court found no evidence showing that

16

defendant's youth was a contributing factor to the offense and selected the middle term for both counts.

## B.     Section 1170

Section 1170, subdivision (b)(2) makes the middle term the presumptive sentence for any offense that provides a sentencing triad.  (*People v. Lopez* (2022) 78 Cal.App.5th 459, 464.)  But if the defendant was a youth at the time of the crime, meaning under the age of 26, and his youth was a contributing factor to the crime, the presumptive sentence is the low term unless the trial court finds the aggravating circumstances outweigh the mitigating circumstances.  (§§ 1016.7, subd. (b), 1170, subd. (b)(6)(B).)

Here, the trial court found defendant's youth was not a contributing factor to the commission of his crimes.  Defendant does not contest this finding on appeal or contend he qualified for other factors in section 1170, subdivision (b)(6).  Therefore, the low-term presumption in subdivision (b)(6) does not apply.

We disregard defendant's argument that other mitigating factors supported the low term because he provides no citation to the record.  (*County of Sacramento v. Singh, supra*, 65 Cal.App.5th at p. 861.)  Thus, the trial court did not abuse its discretion in selecting the middle term on both counts.  Having reached this conclusion, we need not decide whether sufficient evidence supported the jury's true finding of aggravating circumstances.

## VI

### *Ineffective Assistance of Counsel*

Defendant contends he received ineffective assistance of counsel because his trial counsel:  (1) failed to request the voluntary intoxication instruction; (2) failed to file a speedy trial or due process motion; and (3) requested a jury instruction on assault with the intent to commit rape, a lesser included crime of rape.  We find no deficient performance by trial counsel.

17

*A.       Voluntary Intoxication*

"A defendant is entitled to [a voluntary intoxication] instruction only when there is substantial evidence of the defendant's voluntary intoxication and the intoxication affected the defendant's 'actual formation of specific intent.' " (*People v. Williams* (1997) 16 Cal.4th 635, 677.)  Here, none of the witnesses testified that they recalled defendant drinking or looking drunk the night of the assault.  The only evidence about defendant's level of intoxication was girlfriend's recollection that defendant claimed to be drunk when confronted with the assault after it happened.  Trial counsel could have reasonably determined that this scant evidence was not substantial evidence deserving the jury's consideration, and on that basis decided a request for a voluntary intoxication instruction was meritless.  The record does not support a conclusion that counsel performed deficiently.

*B.       Due Process Motion*

"[D]ue process is the appropriate test to be applied to a delay occurring after a crime is committed but before a formal complaint is filed or the defendant is arrested." (*Scherling v. Superior Court* (1978) 22 Cal.3d 493, 505.)  We employ a three-step analysis in determining whether a preprosecution delay has violated due process:  "First, the defendant must show that he has been prejudiced by the delay.  Second, the burden then shifts to the prosecution to justify the delay.  Third, the court balances the harm against the justification." (*People v. Lawson* (1979) 94 Cal.App.3d 194, 198.)  Here, defendant contends he was prejudiced because both his and the witnesses' memories have faded.  But victim provided a police report within 48 hours of the assault.  Victim and other witnesses used the police report as well as contemporaneous text messages they sent to each other to refresh their memories at trial.  This diminished prejudice from fading witness memories. (*People v. Mataele* (2022) 13 Cal.5th 372, 409 ["prejudice from fading witness memories due to passage of time is diminished where contemporaneous police reports exist that may be introduced into evidence or used to

18

refresh the witness's recollection"].) Thus, trial counsel could reasonably conclude the delay did not prejudice defendant and a motion for violation of due process would be meritless. We find no deficient performance by trial counsel.

*C.     Jury Instruction on Assault*

Without any citations to the record or legal authorities, defendant provides a one-sentence analysis why his trial counsel was ineffective in requesting a jury instruction on assault with intent to commit rape, a lesser included offense of rape: "[I]t carries a greater sentence exposure than attempted rape, simple battery and assault, all lesser-included charges to rape which the trial court was required to give sua sponte." We do not review this perfunctorily asserted and insufficiently developed claim. (*People v. Freeman* (1994) 8 Cal.4th 450, 482, fn. 2.)

DISPOSITION

The judgment is affirmed.


/s/                       
MESIWALA, J.

We concur:



/s/                   
HULL, Acting P. J.



/s/                   
RENNER, J.